UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>       v.<br><br>MONZELL HARDING,<br><br>    Defendant. | Case No. 13-cr-00764-WHO-10<br><br>**ORDER ON DEFENDANT MONZELL HARDING'S MOTION TO SUPPRESS AND MOTION FOR RECONSIDERATION**<br><br>Re: Dkt. Nos. 1037, 1039 |

This Order addresses the two motions filed by defendant Monzell Harding that were heard on August 17, 2016. For the reasons discussed below, Harding's motion to suppress evidence obtained on November 9, 2011 is GRANTED, and his motion for reconsideration is DENIED.

**I.    HARDING'S MOTION TO SUPPRESS EVIDENCE OBTAINED ON NOVEMBER 9, 2011**

Harding moves to suppress statements he made to police on November 9, 2011 on the ground that the statements were obtained after he had unambiguously invoked his right to remain silent, in violation of the Fifth Amendment. The government does not dispute that a Fifth Amendment violation occurred but contends that Harding's motion should be denied as moot. Dkt. No. 1054. It states that it "will not offer the evidence at trial but reserves the right to introduce the evidence if [Harding] opens the door at trial." *Id.* I agree with Harding that the better course is to decide the merits of the motion now and to address any remaining permissible uses of the statements if and when that issue arises. The motion is GRANTED.[1]

---

[1] Harding submitted a request to file under seal the three exhibits attached to this motion, as well as the entirety of the motion itself. Dkt. No. 1039. The request to seal the exhibits is GRANTED, but it is not clear to me why the motion should be sealed. At the hearing on August 17, 2016, Harding represented that he would review the motion to determine whether it, or a redacted version of it, could be filed in the public record. *See* Dkt. No. 1062. Harding shall file a public version of the motion within 7 days of the date of this Order.

## II. HARDING'S MOTION FOR RECONSIDERATION

Harding previously moved to suppress evidence obtained from an August 10, 2011 search of his cell phone. Dkt. No. 578. The search was conducted while Harding was on probation for a felony robbery conviction and occurred two days after he was arrested in connection with an auto burglary (the cell phone was seized at the time of the arrest). Dkt. No. 578 at 4. On January 4, 2016, I issued an order denying the motion, finding that the search was a valid probation search. Dkt. No. 774 at 2-4 (the "January 4 Order"). Harding now moves for reconsideration of the January 4 Order in light of the Ninth Circuit's March 3, 2016 decision in *United States v. Lara*, 815 F.3d 605 (9th Cir. 2016). Dkt. No. 1037 ("Mot.").

*Lara* reversed the denial of a motion to suppress challenging a probation search of a cell phone. The defendant, Lara, was on probation as a result of a conviction for possession for sale and transportation of methamphetamine in violation of California Health & Safety Code sections 11378 and 11379(a). 815 F.3d at 607. His probation agreement required him to "submit [his] person and property, including any residence, premises, container or vehicle under [his] control, to search and seizure at any time of the day or night by any law enforcement officer, probation officer, or mandatory supervision officer, with or without a warrant, probable cause, or reasonable suspicion." *Id.* (alterations in original).[2] The probation agreement also included a "Fourth Amendment waiver," which Lara had initialed and which provided,

> I understand under the Fourth and Fourteenth Amendments to the United States Constitution, I have a right to be free from unreasonable searches and seizures. I waive and give up this right, and further agree that for the period during which I am on probation or mandatory supervision I will submit my person and property, including any residence, premises, container or vehicle under my control to search and seizure at any time of the day or night by any law enforcement officer, probation officer, post-release community supervision officer, or parole officer, with or without a warrant, probable cause, or reasonable suspicion.

*Id.*

---

[2] Harding's probation search condition used similar language: "Defendant is subject to a warrantless search condition, as to defendant's person, property, premises and vehicle, any time of the day or night, with or without probable cause, by any peace, parole or probation officer." Milspaugh Decl. Ex. A ¶ 6 (Dkt. No. 678-2).

2

The search at issue occurred after Lara failed to report to a meeting with his probation officer. Two probation officers arrived at his home, announced that they were there to conduct a probation search, and spotted Lara's cell phone on a table next to where they had told Lara to sit. *Id.* at 608. They searched the cell phone and discovered incriminating text messages and photographs. *Id.*

The Ninth Circuit held that the search was unconstitutional. It began by distinguishing *United States v. King*, 736 F.3d 805 (9th Cir. 2013), on the ground that the defendant there "had been convicted of the violent crime of willfully inflicting corporal injury on a cohabitant," while Lara, "in contrast, had been convicted of a nonviolent drug crime." 815 F.3d at 609-10. Finding that *King* was not dispositive, the court turned to "the circumstances of the particular case before us to determine if the search was reasonable[,] balanc[ing], on the one hand, the degree to which the search intrudes upon an individual's privacy and, on the other, the degree to which the search is needed for the promotion of legitimate governmental interests." *Id.* at 610 (internal quotation marks omitted).

With respect to Lara's privacy interest, the court focused on three factors: "[Lara's] status as a probationer, the clarity of the conditions of probation, and the nature of the contents of a cell phone." *Id.* It found that Lara's status as a probationer resulted in his privacy interest being "significantly diminished," yet "still substantial," in particular given that, unlike the defendant in *King*, Lara had not been "convicted of a particularly 'serious and intimate' offense." *Id.* (quoting *King*, 736 F.3d at 809). Next, the court found that Lara's probation search condition did not clearly and unequivocally extend to his cell phone. In so holding, it distinguished the Supreme Court's reasoning in *United States v. Knights*, 534 U.S. 112 (2001), in part by reference to *Riley v. California*, 134 S. Ct. 2473 (2014):

> The Supreme Court in *Knights* explained that a probationer's reasonable expectation of privacy is "significantly diminished" when the defendant's probation order "clearly expressed the search condition" of which the probationer "was unambiguously informed." 534 U.S. at 119-20, 122 S. Ct. 587. But the search term in *Knights* expressly authorized searches of the probationer's "place of residence," which was precisely what the officers searched. *See id.* at 114-15, 122 S. Ct. 587. That is not true here.

3

> Lara agreed to "submit [his] person and property, including any residence, premises, container or vehicle under [his] control to search and seizure." None of these terms – in particular, neither "container" nor "property" – clearly or unambiguously encompasses his cell phone and the information contained therein. Lara's cell phone was not a "container." The Supreme Court wrote in *Riley* that "[t]reating a cell phone as a container whose contents may be searched incident to an arrest" was, at best, "strained." *Riley*, 134 S. Ct. at 2491. Indeed, the analogy between cell phones and containers "crumbles entirely when a cell phone is used to access data located elsewhere, at the tap of a screen." *Id.* (emphasis added) . . .
>
> Nor does the word "property" unambiguously include cell phone data, especially when the word is read in conjunction with the language that follows. We repeat the relevant language here: "property, including any residence, premises, container or vehicle under my control." Each of the specific types of property named as examples refer to physical objects that can be possessed. A cell phone is such an object, but cell phone data, which were the subject of the two searches in this case, are not property in this sense. Further, the Court recognized in *Riley* that cell phones differ from conventional property in that they provide access to data, such as medical and banking records, that is held by third parties. 134 S. Ct. at 2491. Such information not only cannot be possessed physically; it is also not "under [Lara's] control," as provided in the search condition.

*Id.* at 610-11. Finally, the court relied on *Riley* to emphasize "the importance of cell phone privacy." *Id.* at 611 (noting "the amount and character of data contained in, or accessed through, a cell phone and the corresponding intrusiveness of a cell phone search"). It concluded that Lara had a "substantial" privacy interest in his cell phone. *Id.* at 611-12. It acknowledged that his privacy interest "was somewhat diminished in light of [his] status as a probationer," but emphasized that this privacy interest "was not diminished . . . because he accepted as a condition of his probation a clear and unequivocal search provision authorizing cell phone searches (he did not)." *Id.* at 612.

With respect to the government, the court observed that probationary searches advance the government's interests in "combating recidivism and helping probationers integrate back into the community," and that the strength of these interests in a particular case "varies depending on the degree to which the government has a specific reason to suspect that a particular probationer is reoffending or otherwise jeopardizing his reintegration into the community." *Id.* at 612. It then found that Lara's act of failing to report to a meeting with his probation officer was "worlds away from the suspected crimes that prompted the searches in *King* and *Knights*." *Id.* It further

reasoned that while Lara had been convicted of a drug offense, and cell phones are often used in drug transactions, "[the] ubiquity [of cell phones] cuts against the government's purported heightened interest in conducting suspicionless searches of the cell phones of probationers with controlled substances convictions." *Id.*

On balance, the court concluded that the search of Lara's cell phone was unreasonable: "Because of his status as a probationer, Lara's privacy interest was somewhat diminished, but that interest was nonetheless sufficiently substantial to protect him from the . . . cell phone searc[h] at issue here." *Id.* at 612. It also rejected the government's attempt to save the illegally obtained evidence through the good faith exception to the exclusionary rule, finding that the government had cited "no pre-*Riley* case that constituted 'binding appellate precedent' upon which the officers could reasonably have relied at the time of the searc[h]." *Id.* at 613-14.

*Lara*'s most significant contribution to this case is its holding that a probation search condition that applies to the probationer's "person and property, including any residence, premises, container or vehicle" does not clearly and unequivocally extend to the probationer's cell phone. *Id.* at 607, 611-12. The parties previously did not question whether Harding's probation search condition extended to the search of his cell phone, and in the January 4 Order I assumed that it did. *See* January 4 Order at 2-4. Under *Lara*, however, while Harding's privacy interest in his cell phone may have been diminished for other reasons, "it was not diminished . . . because he accepted as a condition of his probation a clear and unequivocal search provision authorizing cell phone searches (he did not)." *Lara*, 815 F.3d at 612.

On the other hand, there are two significant factual differences between this case and *Lara*. First, Harding was on probation for robbery in violation of California Penal Code section 211, not a nonviolent drug crime. *See* Milspaugh Decl. Ex. A ¶ 6. Second, the search of his cell phone occurred as a result of his arrest on August 8, 2011 in connection with an auto burglary, not because of a missed meeting with his probation officer. Indeed, I have already held that the search was supported by reasonable suspicion in light of the August 8, 2011 arrest. January 4 Order at 3. I also held that the two-day delay between the seizure and search of Harding's cell phone was reasonable for a probation search. *Id.* at 3-4. By contrast, the Ninth Circuit in *Lara* characterized

the search at issue as "suspicionless" and found that Lara's missed meeting with his probation officer "was worlds away from the suspected crimes that prompted the searches in *King* and *Knights*." *Lara*, 815 F.3d at 607, 612. The government contends that these differences sufficiently distinguish this case from *Lara* so that the original ruling on Harding's motion to suppress should not be disturbed. Oppo. at 4-5 (Dkt. No. 1053).

This issue becomes a closer question in light of *Lara*, but I continue to find that the search of Harding's cell phone was constitutional. I assume (but do not decide) that Harding's privacy interest in his cell phone was as substantial as Lara's. The government's interest here, however, was significantly greater than it was in *Lara*. The Ninth Circuit in *Lara* stated that the strength of the governmental interest in a given probation search "varies depending on the degree to which the government has a specific reason to suspect that a particular probationer is reoffending or otherwise jeopardizing his reintegration into the community." *Lara*, 815 F.3d at 612. Based on the circumstances of Harding's arrest, the government clearly had a specific reason to suspect that Harding was "reoffending or otherwise jeopardizing his reintegration into the community." *Id.* Given this weightier governmental interest, I find that on balance, the search of Harding's cell phone was reasonable.

Accordingly, Harding's motion for reconsideration is DENIED.[3]

**IT IS SO ORDERED**.

Dated: September 2, 2016



WILLIAM H. ORRICK
United States District Judge

---

[3] Because I deny the motion on this ground, I do not address the government's good faith reliance argument. *See* Oppo. at 6-7.